UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

JAMAR O. KELLYMAN, c/o Jamar
Kellyman-Living Man,

    Plaintiff,

v.                                              Case No.:   2:24-cv-287-JLB-KCD

FAIRWAY INDEPENDENT
MORTGAGE CO.,

    Defendant.
_____

## ORDER

Before the Court is Fairway's Motion to Dismiss Complaint and Supporting Memorandum of Law.[1] (Doc. 5). Plaintiff filed a response. (Doc. 10). As set forth herein, the Court **GRANTS** the Motion to Dismiss. Plaintiff will be afforded one opportunity to file an amended complaint consistent with this Order.

## BACKGROUND[2]

The Court recognizes that Plaintiff is proceeding *pro se* and thus reviews the complaint liberally. In a nutshell, this is a claim for quiet title accompanied by

---

[1] Defendant has failed to comply with Middle District of Florida Local Rule 3.01(g) by its lack of "Local Rule 3.01(g) Certification."

[2] "At the motion to dismiss stage, all well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff." *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, n.1 (11th Cir. 1999) (internal citation omitted). As such, the Court accepts the facts recited in the Complaint (Doc. 1).

1

claims of fraud, federal securities violations, failure to record an assignment, and bifurcation of a note and mortgage.

Plaintiff Jamar O. Kellyman is the borrower and owner of the property located at 5004 Gambero Way, Ave Maria, Florida 34142 (the "Property"). (Doc. 1 at 3; Doc 5-1 at 2). On June 22, 2023, Plaintiff executed a mortgage (the "Mortgage") granting a lien against the Property. (Doc. 5-1 at 2). Defendant Fairway Independent Mortgage Company is listed as the "lender" and "loan servicer" on the Mortgage. (Doc. 1 at 6; Doc 5-1 at 2). The Mortgage Electronic Registration System, Inc. ("MERS") is listed as the "mortgagee" and Defendant's "nominee" on the Mortgage. (Doc. 5-1 at 2). Plaintiff executed a promissory note (the "Note") for $544,087 payable to Defendant. (Doc. 5-1 at 2; Doc. 10-1 at 13–15). On January 9, 2024, MERS assigned the Mortgage to Defendant and recorded such in Collier County's public records (the "Assignment"). (Doc. 5-2). Defendant filed a Notice of Lis Pendens in Collier County on May 6, 2024. (Doc. 24 at ¶ 5). Defendant possesses the Note. (Doc. 24-1 at 9).[3]

---

[3] Plaintiff failed to attach a copy of the Mortgage, Assignment, and Note referenced in the Complaint that are central to his claims. Defendant attached both the Mortgage and Assignment to its Motion to Dismiss (Doc. 5-1; Doc. 5-2), and Plaintiff attached the Note to its Motion to Stay Proceedings (Doc. 24-1 at 10-12). On a Rule 12(b)(6) motion to dismiss, the Court generally cannot consider matters outside the pleadings without converting it to a summary judgment motion. *Horne v. Potter*, 392 F. App'x 800, 802 n.1 (11th Cir. 2010). However, a court can take judicial notice of public records without conversion. *Universal Express, Inc. v. U.S. S.E.C.*, 177 F. App'x 52, 53 (11th Cir. 2006). Thus, the Court takes judicial notice of the Mortgage, Assignment, and Note.

Plaintiff alleges that the "GNMA 2023-097 Trust purchas[ed] the Plaintiff's Intangible Obligation (the debt)" from Defendant without properly recording the assignment with Collier County. (Doc. 1 at 7–8). He alleges that whether the Note was delivered to the GNMA 2023-097 Trust is unknown. (*Id.* at 6). He alleges that the assignment of the Mortgage is precluded because by "selling only the Plaintiffs Intangible Obligation (the debt) to Ginnie Mae, the Kellyman Tangible Promissory Note is no longer eligible for negotiation[.]" (*Id.* at 9). Thus, his allegations conclude that the "[m]ortgage is an unenforceable contract, no longer tied to an obligation to enforce its contractual terms over." (*Id.* at 10).

The Complaint, titled "1 Million Dollar Civil Complaint for Breach of Contract," fails to plead an actionable breach of contract claim. (*Id.*). Instead, Plaintiff pleads counts of fraud in the concealment (Count I), federal securities violations (Count II), "recoupment and disgorgement of wrongful gains" (Count III), "Mortgage Electronic Registration System aka MERS" (Count IV), and quiet title (Count V). (*Id.*).

Plaintiff seeks a judgment that "Defendant return the GENUINE ORIGINAL PROMISSORY NOTE and ALL MONEY PAID"; supply an affidavit stating that the "Defendant has NO RIGHTS to the real property"; return the "DEED and all other documents pertaining to ownership of real property"; declare that "Defendant[] lack[s] any interest in the subject property which would permit them to foreclose . . . the subject property"; declare that the "trust deed is not a lien against the subject

3

properties, ordering the immediate release of the trust deed of record, and quieting title to the subject propert[y]"; return "any and all wrongfully or improperly collected fees and payments"; provide monetary relief, including interest "over $100,000 but not more than $2,000,000.00"; and "produce admissible evidence/Competent fact witnesses." (*Id.* at 26–27). At the risk of oversimplifying Plaintiff's request, Plaintiff is asking the Court to void the Mortgage and release any obligation to repay the approximately half-million dollar loan. Essentially, Plaintiff is making the argument that because the Mortgage was assigned to the GNMA 2023-097 Trust without a proper recording with Collier County and because the Note and the Mortgage have purportedly been separated, he no longer has an obligation to repay the debt, and the Property should be quiet titled in his name. Plaintiff's Complaint is, in effect, a collateral attack against Defendant's standing to foreclose on the Property.

## LEGAL STANDARD

To avoid dismissal subject to a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a plaintiff's complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Mere "labels and conclusions, and a formulaic recitation of the elements of a cause of action" are not enough to survive a motion to dismiss. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

4

Complaints filed by *pro se* plaintiffs are to be "held to less stringent standards than [complaints] drafted by lawyers." *Stephens v. DeGiovanni*, 852 F.3d 1298, 1318 n.16 (11th Cir. 2017). Although liberal construction requires courts to "look beyond the labels used in a *pro se* party's complaint and focus on the content and substance of the allegations," courts cannot "serve as de facto counsel for a party, or [] rewrite an otherwise deficient pleading in order to sustain an action." *Torres v. Miami-Dade Cty., Fla.*, 734 F. App'x 688, 691 (11th Cir. 2018); *Campbell v. Air Jamaica Ltd.*, 760 F.3d 1165, 1168–69 (11th Cir. 2014).

## DISCUSSION

Central to the facts alleged is an understanding of the operation and relevance of MERS, "a private electronic database that 'tracks the owners of deeds of trust and the mortgage servicing firms on behalf of its member organizations through a unique mortgage identification number.'" *Parker v. America's Servicing Co.*, No. 1:11-CV-1620-TCB-ECS, 2012 WL 13009241 at *5 (N.D. Ga. Aug. 31, 2012) (quoting Michael A. Valenza, *Digest of Selected Articles*, 40 Real Est. L.J. 260, 261 (2011)). One court has outlined MERS's role in the mortgage-backed securities industry as follows:

> It has become common for original lenders to bundle the beneficial interest in individual loans and sell them to investors as mortgage-backed securities, which may themselves be traded. *See id.* at 180; *Jackson,* 770 N.W.2d at 490. MERS was designed to avoid the need to record multiple transfers of the deed by serving as the nominal record holder of the deed on behalf of the original lender and any subsequent lender. *Jackson,* 770 N.W.2d at 490.

> At the origination of the loan, MERS is designated in the deed of trust as a nominee for the lender and the lender's "successors and assigns," and as the deed's "beneficiary" which holds legal title to the security interest conveyed. If the lender sells or assigns the beneficial interest in the loan to another MERS member, the change is recorded only in the MERS database, not in county records, because MERS continues to hold the deed on the new lender's behalf. If the beneficial interest in the loan is sold to a non-MERS member, the transfer of the deed from MERS to the new lender is recorded in county records and the loan is no longer tracked in the MERS system.

*Cervantes v. Countrywide Home Loans, Inc.*, 656 F.3d 1034, 1039 (9th Cir. 2011). "MERS' role as a nominee for both the mortgagee and the note holder—a role which it serves in order to facilitate the mortgage-backed securities industry—generally does not invalidate the borrower's obligations under Florida law." *Byrd v. Bank Mortg. Sols., LLC,* No. 14-14069-CIV, 2014 WL 12861313, at *3 (S.D. Fla. Apr. 17, 2014). Thus, any issue Plaintiff takes with a lack of recorded assignment is unfounded in the context of MERS and its designation as "nominee" on the Mortgage.

With this understanding of MERS's role, the Court addresses Plaintiff's issue with the alleged bifurcation of the Note and the Mortgage. The Eleventh Circuit has stated that "the 'bifurcat[ed]' nature of a note and mortgage is par for the course and not the basis for a fraud claim" because they are separate instruments under Florida law. *Price v. Lakeview Loan Servicing, LLC*, No. 21-11806, 2022 WL 896816, at *2 (11th Cir. Mar. 28, 2022) (alteration in original) (citation omitted). In Florida, no rights are created for the assignee when a security agreement is assigned without assignment of the underlying note. *Sobel v. Mutual Dev., Inc.,* 313

6

So. 2d 77, 78 (Fla. 1st DCA 1975). However, this does not mean "that a mortgage is invalid, resulting in clear title to the homeowner, merely as a result of assigning it without the assignment of the note to the same entity." *Altier v. Fed. Nat. Mortg. Ass'n*, No. 1:13-CV-164-MW/GRJ, 2013 WL 6388521, at *4 (N.D. Fla. Dec. 6, 2013) (dismissing a quiet title claim "even if the Note and Mortgage were split when the Mortgage was securitized" because doing such does not make the mortgage and/or note voidable and the plaintiff was still obligated under the note and mortgage). Plainly, whether a defendant holds a note has no effect on a mortgage's validity.

Moving to the claims to which these legal principles apply, the Court will first address the "MERS" and "Declaratory Relief" claims (Counts IV and V). The remaining claims will follow.

## I.     Plaintiff fails to state a claim for "MERS" (Count IV).

Count IV is titled "Mortgage Electronic Registration System aka MERS." (Doc. 1 at 17). Plaintiff alleges that MERS' assignment of the "Security Instrument verifies that bifurcation (separation) of the Security Instrument from the Negotiable Instrument has taken place." (*Id.* at 18). And, thus, the "Negotiable Instrument is now an '[u]nsecured' [i]ndebtedness." (*Id.*). Plaintiff alleges that "the failure to file [in the County public records] establishe[d] bifurcation of the Security Instrument from the Negotiable Instrument and renders the Security Instrument a nullity." (*Id.*). Simply stated, the Complaint alleges that "the assignment of the mortgage, without an assignment of the debt" precludes foreclosure. (*Id.* at 18–19).

7

Even with the liberal construction afforded to *pro se* litigants, the Court cannot identify a claim for which relief can be granted. As previously stated, MERS, by its design, is intended to bypass the recordation requirements of assignments. Thus, the alleged "GNMA 2023-097 Trust purchase" is valid even though it was not recorded in the public records of Collier County. To the extent Plaintiff seeks to avoid repayment of the Mortgage because the Mortgage and Note have allegedly been bifurcated, the claim also fails. *Altier*, 2013 WL 6388521, at *5 (dismissing the plaintiff's claim because "even if the Note and Mortgage were split when the Mortgage was securitized, as Plaintiffs contend, the separation of the Note and Mortgage does not make the Mortgage (or the Note) voidable.").

Thus, even with the liberal construction afforded to Plaintiff as a *pro se* party, the Court is unable to identify a viable claim and Count IV is dismissed.

## II.  Plaintiff's quiet title action also fails (Count V).

Count V brings a claim for quiet title. "Under Florida law, in order to bring a claim for quiet title a plaintiff must establish that (1) the plaintiff holds title to the property in question; and (2) a cloud on title exists." *Id.* at *3 (quoting *Stark v. Frayer, et al.,* 67 So. 2d 237 (Fla. 1953)). A plaintiff "must show with clearness, accuracy, and certainty the validity of his or her title and the invalidity of the title of the opposing party." *Rhodes v. JPMorgan Chase Bank, N.A.*, No. 12-80368-CIV, 2012 WL 5411062, at *3 (S.D. Fla. Nov. 6, 2012). Plaintiff seeks to invalidate Defendant's title by alleging that the Note and Mortgage are "invalid and

unenforceable" and, thus, "constitute a cloud on Plaintiff's property supporting a quiet title claim." (Doc. 1 at 25). However, "subsequent securitization of a note [does not] deprive Defendant of any legal interest in the note." *Rhodes*, 2012 WL 5411062, at *4. Similarly, "the separation of the note from the mortgage does not void the borrower's obligation." *Byrd*, 2014 WL 12861313, at *3. Courts have "repeatedly rejected" the "theory that a mortgage that undergoes securitization is invalid." *Kerr v. Wells Fargo Bank,* No. 215CV327FTM38MRM, 2015 WL 8042272, at *3 (M.D. Fla. Dec. 7, 2015) (collecting cases).

Thus, Plaintiff's claim fails because he has not alleged that a cloud on his title exists. *Kaan v. Wells Fargo Bank, N.A.*, 981 F. Supp. 2d 1271, 1274 (S.D. Fla. 2013) (holding that a "note and mortgage remain a valid and enforceable lien against Plaintiff's property, and do not, as a matter of law, constitute a cloud on Plaintiff's property supporting a quiet title claim."). Therefore, because Plaintiff has failed to allege a cloud on the Property's title, Count V is dismissed.

### III.  Plaintiff's fraud claim fails (Count I).

To state a claim for fraudulent concealment under Florida law, a plaintiff must show: (1) the defendant "concealed or failed to disclose a material fact[,]" (2) the defendant "knew or should have known the material fact should be disclosed[,]" (3) the defendant "knew their concealment of or failure to disclose the material fact would induce the plaintiff[] to act[,]" (4) the defendant "had a duty to disclose the material fact[,]" and (5) "the plaintiff[] detrimentally relied on the misinformation."

9

*Hess v. Philip Morris USA, Inc.*, 175 So. 3d 687, 691 (Fla. 2015) (quotation omitted). Under Federal Civil Procedure Rule 9(b), "a party must state with particularity the circumstances constituting fraud or mistake." To comply with Rule 9(b), a party must "plead the who, what, when, where, and how of the allegedly false statements and then allege generally that those statements were made with the requisite intent." *Mizzaro v. Home Depot, Inc.*, 544 F.3d 1230, 1237 (11th Cir. 2008).

Plaintiff alleges generally that he detrimentally relied upon Defendant's concealment of "a third party Securitizer as well as the terms of the Securitization Agreement[]," of which had "an adverse effect on the value of Plaintiff's and Sureties home by clouding the title." (Doc. 1 at 11–12). The Court has already discussed that no cloud on the title exists. Given the heightened pleading standard of Rule 9(b), and the fact that Plaintiff "does not specify what that fraudulent statement or omission was (beyond the purportedly unexpected transfer, assignment, and or securitization of the note/mortgage debt)," Plaintiff fails to state a claim for fraudulent concealment. *Byrd*, 2014 WL 12861313, at *3 (dismissing a fraud claim that generally alleged the "unexpected transfer, assignment, and or securitization of the note/mortgage debt" was somehow fraudulent); *Aprigliano v. Am. Honda Motor Co.*, 979 F. Supp. 2d 1331, 1343 (S.D. Fla. 2013) (dismissing a fraudulent concealment claim when the plaintiffs failed to allege "specifics of [the] purported scheme, the means [] used to perpetrate the scheme, or specific facts indicating the existence of the alleged scheme."). Indeed, the Mortgage itself plainly

10

and unambiguously states that the Mortgage and Note "can be sold one or more times without prior notice[.]" (Doc. 5-1 at 8). So, even despite Plaintiff's glaring Rule 9(b) pleading deficiencies and failure to state a fraud claim, Plaintiff was clearly on notice that the Mortgage and Note could be sold. Thus, Count I is dismissed.

### IV. Plaintiff lacks standing to bring a securities violation claim (Count II).

Count II attempts to bring claims under the Securities Act of 1933 and Securities Exchange Act of 1934 by alleging violations of 15 U.S.C. §§ 77e(a), (c); 15 U.S.C. § 77q(a); 15 U.S.C. § 78j(b); and 17 C.F.R. § 240.10b-5. Plaintiff alleges that Defendant "offered and sold unregistered securities . . . and made material misrepresentations and omissions of fact and employed schemes to defraud in connection with the offer and sale of securities[.]" (Doc. 1 at 14–15). Defendant argues that Plaintiff lacks standing to bring these claims. (Doc. 5 at 6).

15 U.S.C. § 78j(b), 17 C.F.R. § 240.10b-5, and 15 U.S.C. § 77e permit "only purchasers and sellers of securities [to] invoke the subject matter jurisdiction of the courts[.]" *Licht v. Watson*, 567 F. App'x 689, 691 (11th Cir. 2014). Similarly, "only *purchasers* of securities have standing to sue under 15 U.S.C. § 77q." *Kennedy v. Trustmark Nat. Bank*, No. 3:05CV220-RS, 2006 WL 140707, at *2 (N.D. Fla. Jan. 17, 2006). Because Plaintiff does not allege he was a purchaser of a security, he lacks standing, and Count II, as pleaded, is dismissed.

## V. Plaintiff's "Recoupment and Disgorgement of Wrongful Gains" claim (Count III) fails.

Plaintiff brings a claim for "recoupment and disgorgement of wrongful gains," demanding that funds held in escrow be returned to Plaintiff. (Doc. 1 at 15–17). Plaintiff "demands that the Defendant show on their books that they are not doing offset entries." (*Id.* at 17). Also, Plaintiff vaguely mentions violations of Generally Accepted Accounting Principles. (*Id.* at 15–16). Defendant argues they cannot discern the cause of action, the alleged facts giving rise to liability, and the relief sought in Count III. (Doc. 5 at 7–8). The Court agrees.

Under Federal Rule of Civil Procedure Rule 8(a)(2), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." A complaint that fails to comply with Rule 8 is colloquially referred to as a shotgun pleading.[4] Shotgun pleadings are fatal because "they fail . . . to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Weiland*, 792 F.3d at 1323. To say the Complaint at large is "replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action[]" would be an understatement. *Id.* at 1322. Plaintiff attempts to rectify the deficiencies of his Complaint in his response by arguing he

---

[4] The entirety of Plaintiff's Complaint is also characterized as a shotgun pleading because "each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint." *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1321 (11th Cir. 2015).

has a statutory right of rescission pursuant to 15 U.S.C. § 1635. (Doc. 10 at 5–7). Yet that will not do because "residential mortgage transaction[s]" are *exempt* from Section 1635. 15 U.S.C. § 1635(e)(1). Plaintiff also argues "a plea in recoupment may be used to obtain affirmative relief." (Doc. 10 at 7). However, the Court is confused about the relevance of recoupment since it is a **defense** "available only to reduce or satisfy a plaintiff['s] claim." *In re Sundale, Ltd.,* 499 F. App'x 887, 892 (11th Cir. 2012) (per curiam) (quoting *Kellogg v. Fowler, White, Burnett, Hurley, Banick & Strickroot, P.A.,* 807 So. 2d 669, 670 n.2 (Fla. 4th DCA 2001)). To the extent Plaintiff seeks disgorgement as a private citizen, the claim fails because "in the securities context, the remedy of disgorgement is a distinctly public-regarding remedy, available only to government entities seeking to enforce explicit statutory provisions." *Dunston v. Carrington Mortg. Servs. LLC*, No. 3:24CV00185/MCR/ZCB, 2024 WL 3817191, at *5 (N.D. Fla. Aug. 14, 2024) (cleaned up) (dismissing claims for disgorgement and recoupment based on securities violations when the plaintiff was a private citizen—not a government entity). Thus, Count III is dismissed.

  The Court has carefully and liberally reviewed the crux of the complaint and its individual claims. Given the deficiencies of the Complaint and the overall frivolity of the claims raised therein, *the Court has doubts that any amendment to this complaint would comply with the pleading requirements of the Federal Rules of Civil Procedure.* At bottom, Plaintiff has raised claims that have been **repeatedly** rejected by the courts to avoid repayment of a mortgage he seeks not to repay.

Given Plaintiff's *pro se* status, the Court will provide Plaintiff one opportunity for the Plaintiff to amend his complaint. Accordingly, the Complaint is dismissed with leave to amend. **That said, Plaintiff's *pro se* status would *not* shield him from Court-imposed sanctions and assessment of Defendant's attorney's fees and costs incurred for this litigation.**

## CONCLUSION

Accordingly, it is **ORDERED** that:

1. Defendant's Motion to Dismiss (Doc. 5) is **GRANTED**.

2. The Complaint (Doc. 1) is **DISMISSED with leave to amend**.

3. Plaintiff shall file any amended complaint on or before 30 days from the entry of this Order. If Plaintiff fails to do so, the Complaint will be dismissed with prejudice without further notice.

**ORDERED** in Fort Myers, Florida on March 5, 2025.

_____
JOHN L. BADALAMENTI
UNITED STATES DISTRICT JUDGE